2011-11-03 KRIPPELZ v. FORD MOTOR CO Thank you, Your Honor. May it please the Court. The District Court entered judgment holding Ford liable for willful infringement and awarding the plaintiff more than $58 million. That judgment should be reversed, both because Ford doesn't infringe and because the only asserted claim of the Krippelz patent is invalid. Did you really think that the personal attacks on Judge Zagel were going to get you anywhere? Well, Your Honor, we certainly didn't think we were making personal attacks on Judge Zagel, and if the Court interpreted it that way, we certainly apologize. You basically said this all turns on the fact that he knew nothing about patent law. Well, that is not – certainly Judge Zagel knows things about patent law, and again, if that's the way Your Honor interpreted our brief, that was not our intent, and it may have been overzealous advocacy, and for that I apologize. Okay. Is the validity claim – that was not a counterclaim, correct? It was not a counterclaim. It is an affirmative defense only, Your Honor. Therefore, I mean, just hypothetically, depending on the moving parts in this case, if we were to agree somehow with you on infringement and validity, we would not be able to reach the validity contention. If you were to agree with us on non-infringement, then for purposes of this case, the validity questions I think would be moot. Now, there is another case, as I think we indicated in the statement of related cases, asserting the claims that were added in re-exam. So I think, again, in that eventuality, the appropriate disposition of the parts of the case that you don't reach would be to vacate so that we're not foreclosed from raising issues that this Court has not had the opportunity to address. Yes, Your Honor. Now, the claimed invention is an emergency warning light to be used while driving in rain, fog, or other dangerous conditions. The emergency warning light provides a warning to other drivers by shining a beam of light downward along the side of the car while being constructed to prevent the beam from hitting the car itself so that reflected light doesn't distract or blind the driver of that car or drivers of other cars. Now, Ford's light is very different. It can't provide a warning while driving in dangerous conditions because it can't operate while the car is being driven. Moreover, it doesn't shine a beam of light at all and far from being constructed to prevent light from striking the side of the car. It's, in fact, designed to cause light to strike the side of the car. Yes, but the difficulty we're having is, I guess, a threshold issue in infringement is what cues product we're looking at, right? That's exactly right, Your Honor. And the district court did not look at anything other. I mean, this is a question. Did the district court narrow its analysis in its entirety to the accused product with the lens broken off? The only thing the district court considered, and he was quite explicit about this, it's at 2075 of the appendix, was only the altered version of the light, that is, the light with the lens broken off. Let me ask you about that. That was kind of an odd way to handle your motion to strike or to disallow the alternative argument as it related to infringement with the lens on. He simply said that your argument was moot because he wasn't going to consider it, but he didn't say, he didn't make an actual waiver finding. Are we to imply that that was a waiver finding? Oh, no, Your Honor. I think you're referring to his post-trial, his post-judgment ruling. What he said there was, there's no question that this is preserved. I mean, this was decided at summary judgment. So even if we had never said another word about it, the issue was preserved. We also raised it in the post-trial motions. I'm not talking about that. I'm talking about whether the other side preserved the issue of infringement with the lens on. I don't think they did, Your Honor, because if you look at, first of all, Judge Zagel in that page that I referenced indicated that he didn't understand that to be their argument and that to the extent it was, he wasn't going to consider it. The 2008 summary judgment motion that is the one that he granted made no argument about the Ford lamp with the lens on. It was all about the altered lamp. So they never made a case that Ford's actual lamp, the product it actually makes and sells, infringes. So if we conclude that the judge looked at the wrong product, you're saying we shouldn't send it back for consideration of a new trial of infringement in light of while the lens is on? We think the judgment of non-infringement for Ford would be the appropriate disposition. Now, clearly at a minimum there would have to be a new trial, but we believe based on the record and the way the evidence was presented and the arguments were presented that judgment for Ford would be appropriate in that instance, Your Honor. Wait a minute. I don't understand. We could grant summary judgment for Ford and then I thought you just said that clearly a new trial. No, I said at a minimum. At a minimum, but you don't think, but your first position is that a new trial is not necessary. Correct. Correct. But if you disagree with us on that, then clearly at a minimum. Let me ask you. If I have a patent on this pencil, just as it exists here, and someone comes along and adds this eraser at the end, is that not still marketing this, selling this, making this, infringing on my patent for this portion of the pencil, even though they've added this at the end and even though you'd really kind of dissemble the pencil by having to break it off? Certainly, Your Honor. That would be infringement. That would be infringement. Why is this case different? This case is very different because what we have here is not just an added element that is irrelevant to the claimed invention. That's just an add-on to the claimed invention. What we have here is an element or a feature that prevents Ford's Light from practicing the limitations of the claim, and here's why that's the case. The claim requires a source of light. Now, it doesn't define the source of light in structural terms. It doesn't say it's a spotlight. It doesn't say you need a bulb and reflector. Rather, the claim defines a source of light in terms of what it must do, and what the claimed source of light must do is direct a conical beam of light outside the housing so that it's visible outside. It doesn't directly impinge on the side of the car. Ford's lens prevents that from happening. With the lens in place, no beam of light leaves the Ford housing. In fact, Propel's expert at 6070 of the Joint Appendix admitted that with the lens in place, the lens breaks up any beam of light that would otherwise be there. In other words, if I take this pencil, then, and I put an eraser on both ends, so that, I mean, what you're saying is this would be analogous to my putting another eraser here so it no longer serves the function for which it was intended, which is a pencil with lead exposed to be used in writing. Yeah, assuming that the claim was written to say that a pencil, a wooden shaft with lead at the end that is able to write, if you then put an eraser on the end with the lead, I think that's right. It takes it outside the scope of the claim. And it has nothing to do with whether the claim is a comprising claim or not a comprising claim. Well, that's their main defense, what you're saying, is it not? Exactly, exactly. But when the so-called additional element basically prevents the accused product from practicing the claim limitations or causes it to function in a way that's expressly outside the claim, then it's not just an irrelevant additional element that you can disregard or break off of the accused product to assess infringement, and that's what happened here. So what you're arguing is that our job is to say does this fit within the high-tech arena or fit within the Intel arena? Exactly, exactly. And it clearly, it fits within the high-tech arena because in Intel it was, you know, a microchip that could be programmed or programmable to perform a certain function. And there was no question that no matter how the chip was actually programmed, it was programmable to do whatever the claim function was. Here it's very different. Here you have to have this source of light, this emergency warning light that shines a conical beam of light out so it's visible outside the housing, and the district court made very clear that it's not just to have the capability of shining a conical beam of light, but even in the jury instruction it said the source of light shines a beam of light outside the housing so that it's visible, the beam of light is visible outside the lamp housing, and Ford's lamp doesn't do that. Moreover, the light that does come, even if you were to disagree somehow and ignore their expert's concession that it's not a beam of light, and you say, okay, it is a beam of light coming out of the lens, well, then it's directly striking the side of the car, which is another limitation that the lens prevents the accused device from practicing. Now, there's another independent... I thought the... so does it fit the meaning of direct, leaving aside the district court's construction? I thought you were claiming that using the lens means it's indirect. No? Oh, no, no. Well, there's a couple of different ways to come at it. It's really... it was the district court's, and accepting Propel's argument, that the lens makes whatever comes out indirect, and so you don't even need to consider it. Our point is, first of all, the lens destroys any beam of light, so you don't even get to the question of whether a beam of light directly impinges or not. But even if it does let a beam of light through, then it is direct, because what direct means is it strikes the side of the car without reflecting off things in the air. There's nothing in the intrinsic record to support this notion of an intervening optical element or a lens being what makes the difference between direct and indirect. So that was really our point, Your Honor, if I responded to your question. And just to be clear, to come full circle to kind of where we started, is it your view that if we were to agree with you on the lens portion, i.e., whether or not that was properly considered, that sort of resolved everything else, all the other issues in this case, fall? Yes, that is correct, Your Honor. Now, there's another independent reason why the summary judgment of infringement was not proper here, and that is that the court refused to consider evidence that Ford presented that showed that even accepting this altered version of the lamp with the lens broken off, there still was beam light that struck the side of the car, and that's what was called the light tools software evidence. Now, the judge held that you can't assess infringement using a tool or a test that was not generally in use or available at the time the patent was filed. So that view goes to, though, if we conclude that the district court was right in considering the accused product in the absence of the lens, then your advocacy is for we wouldn't be on a basis to reverse summary, to enter summary judgment for you, but at a minimum there ought to be a new trial and your expert ought to be able to testify. Exactly, Your Honor. But courts' evidentiary rulings are awfully difficult to set aside, aren't they?  Not that one, Your Honor, for two reasons. First of all, this was not an exclusion of evidence at trial. This was summary judgment. Summary judgment, of course, is reviewed de novo. Second, the judge excluded it because of an understanding that there was a legal rule, which he found in the First Circuit's Ray Bestos case, that tools that were not in general use at the time the patent was filed cannot be used later, just as a matter of law. There was not anything specific about this particular software. So I think because it was an evidentiary exclusion based on a ruling of law, that's also reviewed de novo, and in the Salzer case, for example, this court held that that's the rule. And the rule is just not supported. In the First Circuit case, the Ray Bestos case, it was really a question of claim construction. The claim required a certain moisture content for a resin, and the inventor testified that when he made the invention, he used a particular test. The record established that other tests could produce dramatically different results, and so the First Circuit remanded basically to find out, well, what does the moisture content limitation really mean? Now, in this case, there is no evidence in the record that suggests that what was a beam of light in 1989, when this patent was filed, would be assessed differently today using ray tracing software rather than drawing the ray traces by hand. They simply have nothing like the record that was present in the Ray Bestos case. And the purpose of the test was not to help define the scope of the claim. It was to determine infringement, right? Exactly. It was to determine what does Ford's light do, not what does the claim mean. All right. Let me ask you a couple other questions. With respect to your damages analysis, you're appealing the court's willfulness finding, but you're not appealing the compensatory damages award, despite the fact that you criticized some of the analysis that the district court did or some of the instructions that the district court gave. Is that right? We are not appealing the compensatory award. That's correct, Your Honor. Okay. Now, a third independent reason why an infringement judgment should be set aside, and I just want to touch on it because I see my time is running out, is that this is not, Ford's light is not an emergency warning light, and that's what the claim requires. Every claim recites an emergency warning light. The specification makes clear that the invention is an emergency warning light for warning in dangerous fog conditions and all that. But the district court found that that wasn't a limitation. The district court found that was not a limitation, and we believe that was a mistake. And alternatively, that Ford's system provided enough of a warning feature that it wouldn't matter if it was a limitation. That's correct. And let me touch on that last point first. First of all, Ford's lamp can't operate while the car is moving. It doesn't shine a beam of light and all of that. So at a minimum, if it was a limitation, as we think it is, at a minimum there's an issue of fact. It's not something that could be decided as a matter of law. And we think, in fact, it should be decided as a matter of law in Ford's favor because during prosecution, Cropels drew a clear distinction between lights that were primarily for the purpose of facilitating entry to and exit from the car and lights like his, which were for providing warnings in dangerous conditions on the road. If the court has no further questions. Well, let's hear from the other side, and we'll save you rebuttal time. Thank you, Your Honor. Mr. Ferguson. Good morning. Mark Ferguson, representing the estate of Mr. Cropels and his family trust. I'm going to jump right to the claim construction issue that I think is so important, which is the question of whether we're talking about functional limitations or structural limitations. And I'll get back to the point about the preamble language if the court will. So you're talking exclusively on whether or not we need to consider the lens off? Exactly. That's right, because I think that is maybe the fundamental misunderstanding of what went on at the trial court that I think persists to this day. But what Judge Zagel did was not to consider the product with the lens off and whether that infringed, but rather to consider what the structural limitations of the claim were and to allow the lens to be taken off so that those things could be analyzed. And what I mean by that is this. There are essentially a list of structural elements in this claim put together with a comprising transition, excuse me, of course. But the key ones are as follows. The first one is the source of light limitation, and it reads, a source of light mounted within said housing for directing a conical beam of light downwardly through said opening alongside of said vehicle. Are you saying that he took the lens off for purposes of determining the scope of the claims but did not do his infringement analysis based with the lens being off? No. As a matter of fact, I don't think that the lens being off had anything to do with construction of the claims. And I'll get to how these instructions evolved over time, because what happened was he made ruling after ruling after ruling, and Ford's trial lawyers persisted in essentially ignoring them and performing tests and submitting expert reports that were in conflict with what Judge Zagel had ruled. Yeah, I mean it's pretty clear that he irritated them. And so that's why he kept doing that. But, I mean, it's pretty clear that Ford kept ignoring what he was saying because they just didn't want to buy it and it irritated him, but we need to get past that part. Well, of course. But my point is that some of the later instruction, for example, that talked about the way you measure one of these structural elements has to do with the way light would go through the lensless opening. And I'll get to why that has to do with the structure rather than function. But why is a lensless opening relevant if Ford never sold a lensless opening? I'll get to it. It's this element here. It's next to the structural elements. Where are you reading from? This would be in Claim 2 of the 903 patent. This is the 1, 2, 3. It would be the final of the structural elements. Said opening and said source of light. Said opening and said source of light being positioned to prevent said beam of light from directly impinging on said side of said vehicle. Now that is a structural limitation that tells you how the source of light inside the housing is positioned with respect to the opening. And as you can see, if you know how light passes, if you moved it here and let's just say there's an opening down here, you got the light over here, then the light would direct this way. But if you moved the light over here, it would end up passing in a different direction, if you see what I mean. So why does that answer the question? Well, what it answers the question is this is a structural limitation, but it's measured with respect to where the light goes. And so if you've got a lens on there that essentially obscures how the light goes, if you take the lens off, that allowed our expert, for example, to make his measurements and show that in fact the positioning, which is what the structural element requires, the positioning was as claimed. Yeah, but I'm not sure, at least for my purposes, that that answers the point that I think Judge O'Malley and I were referring to. Why does that get you to the point of whether it was correct when analyzing the accused products to analyze them without the lens where the products are sold exclusively with the lens? Well, it's because if you had positioned the source of light in a way that it did not prevent the beam of light, that unimpeded beam from hitting the side of the car, then you wouldn't have infringement. You're saying we should ignore that limitation. No, I'm not. What I'm saying is that limitation only goes to the positioning of the light source and the housing opening. But it's in the claim. Yes. It's in the claim. I agree. To prevent it from directly impinging on the side of the vehicle. Yes, and that has to do with positioning of the source of light, which is inside the housing, and then the opening in the housing. So that if you had it positioned in one way, the beam might actually go straight onto the car. And if you have it positioned in another way, the beam actually goes away from the car. And there's a good illustration. And therefore, why are you not still obliged to consider the accused products as they're sold? You are. We absolutely agree that you consider them as sold. But the structure, which is the source of light. The structure of the claim, but that doesn't go to the structure of the accused device. Let me explain how the claim reads on the accused device. So I'm understanding what you're saying is even if they had a piece of metal underneath there instead of the lens. The structure is there. That it would still infringe. Absolutely. So you're saying that as long as it's directed to go through that opening, it doesn't have to go through the opening? Well, and I'll just tell you, there are a couple of issues about that. Number one is, as it turns out, the lens in the Ford device is put on the outside of the device. And so it actually does pass through the opening right until it hits the lens. So literally, the beam does go downwardly alongside the vehicle, and it does go through the opening and then hits the lens. So that's point number one. But you didn't really make that argument at the district court. I believe that we did make that argument at one point at the district court. This got argued a lot of different times, I will say, and I wasn't the person arguing it. But the district court did ultimately say that you essentially waived the ability to argue infringement with the lens on. I don't believe that that was the case, that we waived. I don't believe we ever waived the idea of saying that it infringed with the lens on. As a matter of fact, it's always our position that it infringed with the lens on. Well, he says in his order, I note that you initially challenged the device with its lens off as infringing. Therefore, for infringement purposes, I will only consider the device with the lens off. I think what he's getting to there is the fact that the measurements were made with the lens off. In other words, that we were talking about the beam that would pass with the lens off, not suggesting that we were measuring beam light coming through that lens. And so what we're saying is, with or without the lens, the device infringed. And what we did was to demonstrate it with the lens off because that's how you can show the presence of this positioning element that says set opening and set source of light being positioned to prevent the beam of light from directly impinging. It essentially means that however you point the beam in there, it has to be downwardly according to the first element. But however you point it, you also have to have the housing opening positioned with respect to that light so that it doesn't hit the side of the car. And so coming back to how this reads on the Ford device, that's true with or without the lens because the first structure is there, a source of light that causes a, I'll read it, for directing a conical beam of light downwardly through set opening alongside said side of said vehicle. It would do that. And it is more like Microsoft, I would submit, than it is high tech because it's capable of doing that and it would do that. And what Ford has done is at the bottom side of that housing, they placed a lens there, it changes the function, but it doesn't change the presence of the structure. And then the second piece of the structural element is that the source of light and the housing opening are positioned such that no beam of light would directly impinge. So you're saying since it changes the function so that it no longer performs the function stated in the claim, that's irrelevant? I'm saying yes because it's not a means plus function claim. These are structural elements. Means plus function claim has to do with what's in the specification, not what's in the claim. Right, and it's not a method claim. This would infringe. Well, high tech wasn't a means plus function or a method claim. No, but it describes structure in the sense of something being rotatively coupled. And they found that the high tech device was not rotatively coupled. What I'm saying is. But it could have been when she took the screws out. Sure. And here you have to break the lens off in order to. It was cemented on and screwed on. Yes, but again, as I say, whether it's cemented on, screwed on, or there's an opaque cover on that, the structure called for in this claim is present. And to the extent the way light is performing is recited here, it is to provide a description of the structure required. So that, for example, when you say a source of light for directing a conical beam of light downwardly through said opening, you have to have a structure that will do that. But there are lots of structures that can do that. It can be, for example, as was illustrated in the patent itself, a spotlight bulb. There can be LEDs. There can be a conventional filament bulb with a reflector. And all of those things, if configured properly, will cause that beam to go downwardly through the opening and down alongside the vehicle's side. With the lens on, is it capable of directly impinging on said side of said vehicle? No, because the lens redirects. There is no question, both from a scientific standpoint. So the accused product is incapable, I mean, does not have the structure to achieve this, right? The structure doesn't do what the claim says, directly impinging on said side of said vehicle. Well, the claim says that it doesn't. We prevent it. And in particular, it says positioning the source of light with respect to the housing opening so that it doesn't. That's what was tested with the lens off, so that there could be no argument that this actually does beam light on the side of the vehicle. And, you know, I come back to this because Ford has said over and over again in a brief, the object of their invention is to light up the side of the vehicle. If you look at their system design specification, the picture is almost the same as what is in the Crapel's patent. It shows the beam of light going right down alongside and hitting the ground. And that's the way they specified it. And then, of course, they put the lens on it, that's true, but they specified it with respect to how that beam was going to be directed. And that's found. It's in our brief. The illustration is in our brief. And then when we took the lens off, we were verifying that, of course, what's in the system design specification is, in fact, what was shipped. And over and over again, with vehicle after vehicle, that's what we found. So it's not that you have to take the lens off to find infringement because with or without the lens, even with an opaque cover, it infringes. What it is is that if you want to get an optical engineer to address the question of whether the positioning element is the way it should be, that's the way you have to do it. So you're asking us to read the claim in light of the spec as not actually requiring the light to go down alongside the vehicle. All the way down it, yes. Okay, so you're saying that despite every single figure and despite the description and the specification that talks about the importance of it going down, that that's not what you're claiming. That's exactly right. Well, the claim says directing a comical beam of light downwardly through said opening. So you're saying it does that but it never gets all the way? It doesn't go all the way. It does go through the edge of the opening, there's no doubt. So literally it does do that. But no one ever made that finding. I mean, that's the point I was talking about before with respect to this issue of waiver. I mean, the district court said my rationale, his rationale for not considering infringement with the lens on, is that had Kripal been clear from the start that he was challenging the device with the lens on as infringing, the parties may have devoted more time to briefing different issues such as, for example, the proper construction of housing opening element of Claim 2. So the district court at least felt that that issue of whether the beam was going through the housing opening was not presented. Well, I think there are two things. Number one, I think the record is clear that the lens was placed on the bottom. And I think as a matter of pure physical science, that makes clear that if the housing has any width at all, which, of course, physically it must, then it does go through the housing. It also clearly is true that because we've done the analysis with the lens off, we know that the lens, that the light source does direct the beam downwardly as required in the first of these two elements that I've been talking about. So the record does have the facts from which this court can see that even if you take the view that this is not purely structural, that this is functional language and it actually has to be functioning to infringe, the record is still there that this would be an infringing product. So we're supposed to make that factual finding in the first instance, you're saying? I don't think you need to make that factual finding. I think that the record is sufficient there and that you could, as a matter of law, conclude that that's true and that would be a ground for affirmance. Let me also address the exclusion of the computer simulation that was excluded under the Raybestos rule. That simulation was a very sophisticated modeling type of program. It actually takes mathematical inputs to try to model and then using today's modern computers, takes those mathematical inputs and posits where all the light created by a particular lighting device would go. Are you saying that this particular method of measurement was appropriately excluded or that, as a matter of law, any method developed after the filing date? Well, I think my argument is the former because I don't think that... That's not the ruling that the judge made. Well, it is the ruling that... You're saying we should find an alternative basis for exclusion? No, what I'm saying is that the judge... First thing I want to mention is that Ford has said in the reply brief that they don't challenge the rule of the Raybestos case and so the question is, was it properly applied? That rule really is addressing the question of how you interpret the claim. I mean, you're supposed to be interpreting the claim based on the view of one skilled in the art at the time. That's different than saying you can't ever use any test to show infringement or non-infringement. Well, you know, I don't think that's the correct characterization of that ruling because what they were doing is that that claim had an element that required a range of moisture content. And a range of moisture content was tested using a new test, in that case, which everybody said was the more sophisticated test and was going to be more accurate. And the patentee had used an earlier test as he wrote his claims. Now, you could say, well, he was... Then you have to find out what the claims mean and then we automatically know what the test shows, whether it's covered or not. Or you could say, we know what the claim says. It has a stated range of moisture content. And our new test is being used to be more accurate in whether or not the accused product has the moisture content. So I think that it's very much like this, where you're using a brand-new test to discern something that couldn't have been discerned at the time with this precision. And so, but leaving aside that question, as I said, Ford has said they aren't challenging that rule. The question is, was it properly applied? And what Judge Zagel said over and over again, both at the time in his ruling and also in his JMOL ruling, was that he was never given any foundational evidence on which he could decide that question. I think we have that issue. And we are out of time. Anything else you need to ask? Thank you. Okay. That issue we can figure out, Mr. Ferguson. Okay, Mr. Trella. Thank you, Your Honor. It propels his position that a patent on an emergency warning light covers devices that don't actually shine any light out of them. It's pretty amazing. And it's not just amazing in a common-sense way. You can't square it with the claim language. You know, the claim talks about directing a conical beam of light below the window so as to be visible from in front and behind the car. Well, he's saying as long as it's mounted for that purpose, that would be enough. That's what he's saying, but that doesn't make any sense. And more importantly, it's not the way Judge Zagel construed the claim. In the jury instruction, this is at 95-97 of the appendix, the judge said the source of light must also direct a conical, must direct, not must be capable of directing, must direct a conical beam of light, a beam of light that diverges, downwardly but not necessarily perfectly vertically downwardly, through the opening and along the side of the vehicle. So this notion that as long as it's able to do that, you could put a piece of cardboard in there and block it, that still practices the claim, that's just contrary to the court's claim construction. And Propelz has never challenged that construction. So it just doesn't make any sense to say that Ford could have, as counsel said, that we could have put a piece of metal in the opening and that that somehow would still practice the claim. What about his argument that even if you're correct with your interpretation or the trial judge is correct on that claim interpretation, that the light still passes through the housing before it hits the lens? Well, first of all, there's no record on that. And, in fact, this notion that the lens is below the housing, I think if you look at the pictures, it shows that there are screws actually going up. So it's clearly not entirely below the opening. It's at least partially in the opening. And, moreover, the construction, which I think your question asked me to assume is correct, says it passes through the opening and along the side of the vehicle. And the claim requires that it goes along the side of the vehicle so that it's visible from in front of and behind the car. So this notion that as long as it's some fraction of a millimeter into the opening that that practices the claim, it's contrary to the construction, it's contrary to the claim language, and it's contrary to the law.